So the first case is Banca Di Credito Cooperativo versus Small, and we have Mr. Moskowitz for the appellant. Good morning, Mr. Moskowitz, and we have Ms. Palmer. Yes, Palmer, and I can hear you. Great. All right. So, Mr. Moskowitz, you're up first, and I see that you reserve three minutes for rebuttal. Go ahead. Yes. Good morning. May it please the court, this is a case in which the plaintiff totaling approximately 3.7 million euros, and he failed to pay those loans back. The default occurred in March 2008. On pages 597 to 603 of the appendix, defendant's expert describes the process that occurs in Italian bankruptcy court. This process affords the creditor and the debtor notice, an opportunity to be heard, and a right of appeal. Once this process concludes, the statement of liabilities becomes definitive and controls the distribution of property within the bankruptcy proceeding. Mr. Moskowitz, would you compare this, or do you think this would be misleading, to compare what happens in the Italian proceeding with what happens in a U.S. bankruptcy court, where a claim is allowed in the bankruptcy court? Is that similar to what happened here? I don't think so, Your Honor. I think in this case, the claim was allowed, but then there was an appeal. It was appealed to the civil tribunal of Vecchione, and then it was deemed to be final. And then, I mean, I don't pretend... That's fair enough, and I appreciate that wrinkle on it, and I perhaps should have included that in the question. But even if that had happened in the United States, if there were an interlocutory appeal, or maybe it's, I don't even know whether it's an appeal as a right to the district court, and the allowance of the claim was approved, you still couldn't get any money out of that. Initially, you'd have to wait until the bankruptcy court had allowed or disallowed all the claims, and then the bankruptcy court gives out a pro rata share of whatever assets are there to the various people, creditors with allowed claims, right? So is that a similar process? I don't think so, Judge. I think in this case, you have a case where this has been deemed final, closed, and no longer subject to appeal. Once the debtor is restored in bonus, and at that point, the creditor has an opportunity to bring what's called an injunction of payment decree. And in this case, the statement of liabilities would be considered to be a judicial tito escutivo. I'm wondering about the practical consequence, though. Could you go into an Italian court now, before the other creditors have had their say in the bankruptcy court, and just attach whatever assets there are belonging to the debtor in Italy? Well, no, the bankruptcy has to conclude. But in this case... That's what I'm getting at. Here in the United States, you would not be able to take an allowed claim into some other court and get a garnishment in your favor against the assets of whatever assets the debtor has. That's correct, Judge. And the same is true in Italy, yes? Well, but the distinction here is that in this case, the U.S. assets... Mr. Mangione failed to declare the U.S. assets, and so as a result, he was violating Italian law. And what happened was we received leave of court from the bankruptcy court to pursue... The trustee determined because of cost, they were not going to go after the assets of the United States. But the result of that declaration is that we are permitted to legitimately pursue assets in the United States. That's what our expert says on page 608 of his opinion. So right now, what we have is we have a judgment, a determination of 4.4 million euros. It is final. It is no longer subject to appeal. Mr. Mazzi, it also has to be enforceable, and I think both experts agree under the Italian Bankruptcy Act, Section 96. I think you mentioned it yourself, that you have to go to a commercial court in Italy and get... By the name of Mike Bianco, I should be able to pronounce this, right? You have to get something... You can't walk... In addition to the issue that Judge Winch identified with whether or not the bankruptcy is final, in order to enforce it in Italy in another court, you have to go to another court first, right? You do, Your Honor, but there's no defense. There's no defense to the... You bring ex parte. But it's not enforceable. I understand you're saying there's no defense, but it's not enforceable until you go through that process. That court has to make its own determination, right? Doesn't the commercial court... There may be no defense, but the commercial court has to determine that they grant an application and they have to make this order. It's a ministerial act. It's no different than an arbitration award. It's no different than what this court found in the sea transport case. I mean, you have something where, right now, you go to that court, it's judicial tito escutivo. Now, wait, hold on. You said the sea transport case, the award was the equivalent, functional equivalent of a French judgment. That's what this is here to do. They had conferred in France, they had conferred, again, I'm butchering all these names, but the ex jupitor. So that had been done in France in that case. But Josh, that's what this is here. I mean, if you look at... But you haven't done it yet. You haven't done it yet. Well, we're not able to do it because the bankruptcy still is ongoing. However, on page 40 of the appendix, you see the case is closed. It's final. It's no longer subject to appeal. And if you then go... Answer this question. If you were walking to another court in Italy and try to get assets off of that bankruptcy order, would that court in Italy say, you can do it, or would they say you have to go to the commercial court and get the tito order? What would they say? What would the court say to you in Italy? The court in Italy would say, Dadder, you have 20 minutes to respond. Sorry, 20 days to respond. And you have no defense. The statement of liabilities is definitive. So you have no defense the enforcement of the action. So how is that any different than a judgment? I mean, aren't we elevating form over substance here? Oh, no, we would be giving you greater rights in the United States to enforce that order than you would have in Italy right now. That's what we would be doing. Judge, all you would be doing is recognizing a judgment to which the debtor has no defense. There's no defense to the action. We would be recognizing a judgment that is not currently enforceable in Italy. We're going to enforce it in the United States. But it is enforceable. I mean, in other words, I don't want to go in circles with you. You haven't gone to the commercial division, the commercial court in Italy. It is not enforceable right now outside the bankruptcy context. And you want to enforce it in the United States, even though you can't enforce bankruptcy in Italy. We're stuck in a situation where Mr. Mangione has passed. He has defaulted in bankruptcy. And as a result, basically, we're in this sort of perpetual situation where it can't be enforced. But nevertheless, the fact of the matter is, is that New York is supposed to be relatively generous in recognizing foreign judgments. And in the C-Transport case, the court said, we might even recognize a foreign arbitral award because it really, without any prior judicial intervention. Not only that, CPLR 5307 specifically states it does not prevent the recognition of foreign country judgment in situations not covered by this article. There's a concept of comedy that was completely absent from the district court's opinion. And as noted in our brief, in many instances, both this court and New York, the court said, we're going to recognize foreign judicial orders, even those that are non-final. I look at all those cases. In this Till Dixon case, the British money judgment was final, conclusive, and enforceable. So the final one you may have, maybe conclusive you have, but you don't have the enforceable part. That's the part that's missing. Well, I guess it depends on how you define enforceable, Judge. I mean, once the bankruptcy concludes, it is enforceable. There's no question about that. So the question becomes, how is it, are we going to take a formalistic approach? Or there's no question that it's been, I mean, there's nothing further needs to be determined. Your expert says it's not enforceable. Your expert says it's not enforceable until you go to the commercial court in Italy. You're saying that's a formality. I understand your argument, Judge. That's correct. I'm saying it's a formality. But it's still another step. But where does it say, but CPLR 5302 simply says enforceable where rendered. This is enforceable. It's finally conclusive. All right. Okay. I just very briefly on the issue of the form selection clause, all the pertinent documents in this case, this court in Martinez versus Bloomberg said, in determining whether a particular form selection clause is mandatory or permissive, it must apply the law contractually selected by the parties. In our case, all the pertinent documents refer to and incorporate the Italian civil code. We therefore submit that Italian law should have been applied to this inquiry. But that's to say, that's not really the issue of how to read the clause. That's the issue of whether the clause would be recognized in Italy. It sounds as if, I'm not no expert in Italian law, but it sounds from your argument in the brief that the form selection clause might not be enforceable in Italy, because there's a separate rule about this kind of case. But that's not governed by Italian law. That's governed by U.S. law. The question is, how do you read this clause? Did the parties intend it to be mandatory? Well, in Martinez versus Bloomberg, the court said, in determining whether a particular form selection clause is mandatory or permissive, you apply the law contractually selected by the parties. That's Italian law. And under Italian law, where the debtor's assets are located, has exclusive jurisdiction, and that cannot be changed by the parties. Now, excuse me, Mr. Muskowitz, and this gets me to the question of what that Italian principle actually is. Are we mixing the apples of where an enforcement action could be brought, which always, it seems to me, would be in the place where the assets are, with the question of the contract claim? No, Your Honor. I encourage Your Honor to read page 610 and 611 of the appendix. It's where our plaintiff's expert explains it. The loan agreement and the line of credit agreement constitute titolo escutivi. Therefore, the court where the debtor's assets are located has exclusive jurisdiction. But there are assets in Italy, too, aren't there? Sure. But so then there would be jurisdiction in Italy, but there's also jurisdiction in New York. Well, but if there's jurisdiction in Italy, too, then there's not exclusive jurisdiction in the United States, right? Well, no, I don't think that's true, Your Honor. I think the idea is that the parties may not constrict where jurisdiction occurs by saying that it's going to occur in Italy, that it only can happen in Italy. They cannot restrict that. Italian law governs, and here we have— That sounds exactly like a question that is normally governed by U.S. law in these circumstances, which is, is this purportedly mandatory clause enforceable in Italy? Well, I think the Martinez v. Bloomberg case says that the court, in determining whether it's mandatory or permissive, the court must apply the law contractually selected by the parties. And in this case, all of the pertinent documents incorporate and refer to Italian civil code. Therefore, we submit that Italian law should be applicable to this inquiry. And under that inquiry, the debtor's assets are—it should be jurisdiction be wherever the debtor's assets are located. At a minimum, though, I think that the court, pursuant to the New Moon Shipping Code, should have held an evidentiary hearing on the issue of whether enforcing the informed selection clause would be unreasonable or unjust. I mean, let's not forget here, we are—it is a court of equity in addition to being a court of law. Nearly five years after the civil tribunal issued its final judgment, the bank has not collected any portion of the money that it is owed. There are assets in the bankruptcy proceeding that are still available, right? Well, Judge, there are, but if you look at the trustee's statement at page 473 and 474 of the claim, and similar questions exist in the separate proceeding for reorganization, that's in page 479 of the— Your client would also have the ability to bring the proceeding outside the bankruptcy in Italy. As a practical matter, Judge, that will never happen because the debtor has passed away, and this bankruptcy will never conclude. It will never conclude. And so you're left with a situation where a bank is loaned as owed 4.4 million euros— What do you mean it will never—why will it never conclude? Because the debtor will never be able to be restored in bonus, because he's never complied—he defaulted. He never complied with the bankruptcy—procedures of bankruptcy. So as a result, the bankruptcy will be open in perpetuity. So wait, it's Italian law that if you are in bankruptcy proceedings and you justify the court, it all ends and ha-ha? And if you die, all the better because your estate can't be pursued any longer? It doesn't end, Judge, but it doesn't end. It just never concludes. Quite the opposite. Only when the debtor is restored in bonus, which means he's satisfied his obligations and complied with the court, at that point then the bankruptcy concludes here. This bankruptcy is never going to conclude. It was filed in 2008. We're in 2021. So you're telling me that under Italian law, in perpetuity, there will be a bankruptcy estate and none of the creditors can get anything out of that? Well, those are two separate questions. The question is whether there will be an ability to collect. But if you look at the two trustees' statement, if you could do one thing, look on page 473, 474 of the appendix and 479, the trustees, there is a real doubt that our bank will be able to recover a dime. And five years after the Civil Tribunal of Icona issued its final judgment, the bank has not collected any portion of the money that it's owed. And the default occurred in March 2008. This is 13 years later. All right. Okay. I think we understand the position. Ms. Palmer, you're up. Your Honor, Michelle Palmer from Strzok & Strzok & Levan on behalf of Appelli, Charles Small, as the preliminary executor of the estate of Fred Vangoni. So there are two issues, as the court has heard on appeal. The first is the recognition of the Italian bankruptcy court orders. Judge Bianco, as you pointed out, the issue is that by recognizing those judgments here, it would absolutely give those two bankruptcy orders greater force than they would have in Italy. To respond to a few points that Mr. Moskowitz had made, the subsequent proceeding that would have to happen in order to obtain an enforceable judgment in Italy, which he describes as ministerial, a formality, and to which there is no defense, is not at all supported in the record. Mr. Troiano already explained that those proceedings have defenses that can be asserted. And in fact, in the authority that Mr. Moskowitz cited in his reply brief, the Perillo site, even that site acknowledges that once a defense is asserted, and I am quoting, the proceeding unfolds as an ordinary civil action with the burden of proof on the claimant. It is not a mere formality. It is a requirement in order to obtain an executable judgment, just like in C-Transport, in VCORP, in all of those cases where there had been an arbitration award. But the issue here was whether because executor is, there was a court order that gave those judgments the ability to be executed upon, which is precisely what's missing here, and what can be obtained in that second proceeding in Italy once the bankruptcy concludes. The other thing I would point out, Mr. Moskowitz made much of a supposed default by Mr. Mangoni in compliance with the bankruptcy court procedure, which is not supported in the record. Again, Mr. Troiano's second statement on Italian law has indicated that there is nothing in the record to suggest that. In fact, there is nothing in the record to suggest that Mr. Mangoni himself received service of process. Now, we're not asserting that as a defense. I pointed out merely to respond to the baseless claim that Mr. Mangoni somehow engaged in any kind of wrongdoing within the Italian proceeding. And as the court has pointed out, it is in this case undisputed. Both of the Italian experts acknowledge that the bankruptcy proceeding itself is enforceable within the bankruptcy. It determines the distribution of claims within the bankruptcy, but that outside of the bankruptcy, both the Italian Bankruptcy Act and decisions by the Italian Supreme Court confirm that outside of bankruptcy, more is needed, and that more hasn't happened here. Ms. Palmer, can I ask, it sounds as if it would be a relatively simple thing, even if it's not quite as ministerial as Mr. Moskowitz suggests, for the bank in Italy to go to an Italian court and attempt to register the judgment or get whatever decree is necessary to render it enforceable. At the same time, it sounds likely to me anyway that one problem might be that an Italian court is not going to give you an enforceable judgment just like that when the proceedings are still going on in bankruptcy, lest you circumvent the bankruptcy and seize assets in Italy. And on the other hand, it would seem that an Italian court is not going to be particularly eager to create some novel system in which they create an enforceable judgment that is enforceable only in another country. So I'm having a little trouble understanding, and maybe the expert reports address this or maybe they don't, whether as a practical matter. I mean, I'm just, again, thinking as an American lawyer, in an American bankruptcy, if I had an allowed claim in the bankruptcy court, I'm not sure what would happen if I went to a district court and said, can you give me an enforceable judgment? And the court would say, well, no, you can't have an enforceable judgment. You can only enforce this in bankruptcy. You're only going to get your provided share. The guy's bankrupt. You can't bring any proceedings. Does the bankruptcy stay? What's going on? And if I said, well, I want to take this judgment to Italy, I think, I don't know what the court would do. Is there anything in the record that addresses whether, as a practical matter, it would be possible to get an execution in an Italian court? I don't think that it's addressed in the record while the bankruptcy is pending. Obviously, once the bankruptcy concludes, the bank is free to follow this proceeding. And to be honest, I don't know whether Italian law has a provision to seek relief from the stay that's in place. It very well may. The bank obviously never raised this issue below, so it wasn't addressed. OK, well, that's the answer if there's nothing in the record. I don't think there's anything in the record. But of course, like any debtor in a bankruptcy, the bank has its remedy within the bankruptcy proceeding. And while Mr. Moskowitz dismisses the possibility of recovery, the fact of the matter is the assets that are held in both proceedings in Italy are real property. These assets aren't going anywhere. And sure, the market has fluctuated in value, but it can go up just as easily as it can go down. And there are real properties here. There's substantial value that has both been sold and distributed and remaining to be sold. And can I ask a question about something else Mr. Moskowitz suggested? He suggested that this bankruptcy proceeding is somehow an infinite proceeding that will never conclude. I realize that one can get impatient that bankruptcy proceedings, complex bankruptcy proceedings in any country, including the US. But I think he was suggesting that as a matter of law, because of, you know, let's not call it a default by Mr. Mangoni, because of something to do with that Mr. Mangoni is no longer living, there can't be an end to the bankruptcy proceedings. Do you understand that? And if you do, do you agree or disagree with it? Well, I understand that that's the claim he made. I don't agree. I don't think there's anything in the record to suggest that the proceeding can never end. In fact, to the contrary, the experts both address the fact that once the proceeding ends, there is this opportunity to action or an actual lawsuit of some form in order to get a judgment. I think that the argument that's being made, and Mr. Moskowitz can correct this on rebuttal, but I believe the argument that he's making is that because of this wrongdoing by Mr. Mangoni, somehow, that somehow means the bankruptcy can never conclude. I don't, there's nothing in the record to support that the bankruptcy case will never conclude. If that happens, I should also point out that this notion that the bank is kind of stuck in this limbo phase is really a situation of its own making. The bank is the one, of course, that brought the bankruptcy proceeding in the first place. And the bank, as part of the creditors committee, determined not to pursue the New York assets as part of the bankruptcy case. I appreciate Mr. Moskowitz's position that the bank now has to wait until the bankruptcy concludes before he can first see how much actually the bank has recovered and what claim is left, and then decide how to best proceed against either the remaining, the partnership, the general partners, which is not just Mr. Mangoni, that there may be other assets available at that point. And if I could just address quickly the form selection clause issue, and I think the court has recognized that these, the language here of the form selection clauses is mandatory. Mr. Moskowitz's argument is really on the last prong, that because the assets are here, it would be unreasonable to require him to proceed in Italy. But I think as the court has recognized, there is a distinction between the proceeding for adjudicating the claim, for bringing the breach of contract action, and executing on any judgment that results. And as to the former, that he has to do in Italy. Once he gets a judgment, then he can enforce wherever the assets may be found. But the fact that some of these underlying documents require execution where assets are located, doesn't mean that the breach of contract claim itself can be adjudicated here in this forum. What about the issue of a lack of a hearing? The only factual dispute that has been raised by the bank is, will he recover money in the Italian bankruptcy proceeding and how much? And while Judge Etkin is very good, I don't think anybody can determine what will happen in the future in that proceeding. No, but I guess at this hearing, you could potentially explore this issue about whether the Italian bankruptcy will go on forever and therefore this would be unjust. Could that be the type of thing that would go on at such a hearing or not? I don't know. What would be the factual dispute? Whether the hearing continues indefinitely? That would presumably be a question of Italian law as to the status. You'd have a hearing about Italian law then, right? I suppose, but that isn't the issue that the bank raised. The issue that the bank raised is whether he would recover because the claim has always been that the bank could recover nothing. As a factual matter, I think that has been shown to be incorrect. The bank has recovered. Did they request a hearing from the district court? They did not request a hearing. There is a reference in the brief, which is now part of the supplemental appendix, to the general standard, which is that the court, without a hearing, decides it on the papers. But there was never a request for a hearing. Again, the claim there, like here, is that we don't know what's going to happen in the bankruptcy. But that doesn't rise to the level of a strong showing that proceeding in Italy is unjust. Thank you, Ms. Palmer. Mr. Moskowitz, you have three minutes in rebuttal. It might be helpful, at least to me, Mr. Moskowitz, on this issue of the indefinite bankruptcy. If you could point in the record to either your expert or somewhere in the record where that was addressed, that this, given the circumstances now, that this Italian bankruptcy is never going to end. Thank you, Your Honor. At page 474 of the appendix, this is a statement from the trustee. This is in May 2018. He says, at this juncture, we cannot predict either the timeline for the liquidation of the assets or the amount of expected proceeds. He said there are liabilities adjudicated in the amount of approximately 6.8 million euros and 26.8 for unsecured creditors. And the assets in this estate are... Wait a second. That just says, I think, it's not surprising. We don't know the timeline or the outcome. It doesn't say, because of these circumstances, the bank will never be able to emerge from the bankruptcy. Well, Judge, this was in May 2018. We're in 2021. The bank has not recovered any money. And so, basically, if you look at our expert's opinion, the only way that the bankruptcy can There's a reference on the appendix 479 to the corporation having assets of 13,794,000 euros. Is that still available for collection? Well, but Judge, at 479, it also says, at present, it is not possible, it's paragraph 7, to accurately predict if, when, and for what value the assets can be liquidated. Of course, the trustee is not Houdini, but the assets are there. But Judge, this is June 2018. We're in 2021. The bank has owed 4.4 million euros, and it hasn't recovered a dime. It only recovered the money based on that it recovered 20,000 for the insurance proceeds. That's it. He hasn't recovered any part of it. What happened to these assets? Have they disappeared or are they still available? Judge, I think they're still liquidated. What's your response to Ms. Palmer saying the bank chose to proceed in this way? Obviously, it hasn't worked out well, but the bank chose to. I'm not sure what that exactly means. I mean, of course, they're going to bring an action in just because they chose to. They have someone who defaulted on a loan. Of course, they're going to bring an action in Italy to try to recover. Well, wait, wait, wait, wait, wait. That's not the issue with it. They brought an action in Italy. It's that they forced involuntary bankruptcy. They didn't just file a lawsuit and seek a judgment. They put the debtor into bankruptcy, right? Right. Well, that's correct because he defaulted on the loans. And they chose to exclude the United States assets from the bankruptcy proceeding because they made a judgment call that in their judgment, cost-benefit-wise, it would not make sense. Correct. The trustee made that judgment, Judge, not the bank. That's on page 430 of the appendix. The trustee did not want to... The bank had no input on that decision? They weren't asked? Judge, I mean, the trustee makes the final call. And what they said was, we don't want to encumber the trustee with additional costs, which are not supported by a concrete possibility to carry out successful legal action in LOCO. Our expert notes that, therefore, this means that we were able to legitimately pursue assets in the United States. By the way, the bank chose to pursue the action in Italy. But if Mr. Mangione had complied with the law of Italy and declared all of his assets, as he was required to do, then we wouldn't be in this situation. But he failed to do that. And by the way, just with regard to what Ms. Palmer said, if you look at the judgment, there's absolutely no question that Mr. Mangione was served both via the corporation, which constitutes viable service, and personally, even though it wasn't required to do so. All right. Your time is up, Mr. Muskowitz. Thank you very much. And Ms. Palmer, thank you to you as well. You deserved the decision. Have a good day.